**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**KEYLI CRUTHIS, CORTNY SPURLOCK,
and KRISTEN WHITWORTH**                                             **PLAINTIFFS**

**v.**                                         **No. 4:12CV244 KGB**

**VISION'S, individually and d/b/a VISIONS and/or
d/b/a VISIONS CABARET; MINOR BOOTH, Individually
and d/b/a VISIONS and/or VISIONS CABARET**                 **DEFENDANTS**

<u>**OPINION AND ORDER**</u>

Before the Court is plaintiffs' motion for certification of collective action, for equitable tolling, for disclosure of contact information for potential opt-in plaintiffs, and to send court-approved notice (Dkt. No. 27).  Defendants, Vision's, individually and d/b/a Visions and/or d/b/a Visions Cabaret, and Minor Booth, individually and d/b/a Visions and/or Visions Cabaret (collectively "defendants" or "Visions"), have responded in opposition, plaintiffs have replied, and defendants have filed a surreply, which plaintiffs have moved to strike (Dkt. No. 41). Defendants have responded to the motion to strike and have filed a motion for leave to file a surreply and an amended motion for leave to file a surreply (Dkt. Nos. 43, 46).  Defendants' motions for leave to file a surreply are granted (Dkt. Nos. 43, 46), plaintiffs' motion to strike is denied (Dkt. No. 41), and for the reasons that follow, plaintiffs' motion for collective action certification is granted in part and denied in part (Dkt. No. 27).

    **I.**    **Background**

Plaintiffs Keyli Cruthis, Cortny Spurlock, and Kristen Whitworth are former and current exotic dancers at Visions.  They bring this action to recover unpaid minimum and overtime wages pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA").  Ms. Cruthis

and Ms. Spurlock filed their complaint on April 24, 2012.  Ms. Whitworth filed a separate action

against defendants on May 14, 2012.  The cases were consolidated on September 11, 2012.

Plaintiffs allege that Visions failed to pay them minimum and overtime wages and that

plaintiffs were subject to certain "shift fees" and unlawful "tip-outs."  Plaintiffs filed their

motion for collective action certification on November 29, 2012.  The parties continued to brief

the issues until on or about February 12, 2013.  Plaintiffs seek certification of the following

equitably tolled class:

> All women who danced for Defendants any time from February 11, 2008 to the
> present, and continuing thereafter through the date on which final judgment is
> entered in this action and who timely file (or have already filed) a written consent
> to be a party to this action pursuant to 29 U.S.C. § 216(b).

In the alternative, plaintiffs seek to represent a class consisting of all women who danced for

defendants at any time from April 24, 2009, to the present.

## II.   Analysis

### A.   Conditional Certification

Under the FLSA:

> An action to recover the liability prescribed . . . may be maintained against any
> employer . . . in any Federal or State court of competent jurisdiction by any one or
> more employees for and in behalf of himself or themselves and other employees
> similarly situated.  No employee shall be a party plaintiff to any such action
> unless he gives his consent in writing to become such a party and such consent is
> filed in the court in which such action is brought.

29 U.S.C. § 216(b).

Many district courts in the Eighth Circuit utilize a two-step approach in collective action

cases.

> At the notice stage, the court determines, based on the pleadings and affidavits,
> whether notice should be given to potential class members.  The key issue is
> whether the members of the proposed class are similarly situated.  If the court

> allows notification, then a representative class is conditionally certified and notice
> is sent to the putative opt-in plaintiffs.  At the second stage, the court determines
> whether to decertify the class once discovery is largely complete.

*Smith v. Frac Tech Services, Ltd.*, 2009 WL 4251017 (E.D. Ark. 2009).  This Court has adopted

this approach in at least one other matter.  *See Watson v. Surf-Frac Wellhead Equip. Co.*, 2012

WL 5185869 (E.D. Ark. Oct. 18, 2012).

Plaintiffs' burden at the notice stage is lenient and is usually met by making a "modest

factual showing," typically by the submission of affidavits, that plaintiffs and the putative class

were victims of a common decision, policy, or plan of the employer that affected all class

members in a similar fashion.  *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937,

941 (W.D. Ark. 2007) (citing *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1106-

08 (10th Cir. 2001)).  The court can consider a variety of non-exclusive factors in determining

whether employees are similarly situated.  They include:  (1) whether the plaintiffs hold the same

job title; (2) whether they worked in the same geographic location; (3) whether the alleged

violations occurred during the same time period; (4) whether the plaintiffs were subjected to the

same policies and practices, and whether these policies and practices were established in the

same manner and by the same decision maker; and (5) the extent to which the acts constituting

the alleged violations are similar.  *Stone v. First Union Corp.*, 203 F.R.D. 532, 542-43 (S.D. Fla.

2001) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1090, 1097-99 (11th Cir. 1996)).

Plaintiffs have submitted affidavits describing the alleged nature of their job duties and

how they purportedly were required to pay certain "shift fees" and "tip-outs" each night they

worked.  They state that they observed numerous other dancers being subjected to these same

rules, requirements, and financial controls.  They state that all dancers were categorized as

independent contractors and never paid an hourly wage.  Plaintiffs have also submitted affidavits

from five other former Visions' dancers—Kalie Brown, Stacy Jones, Crystal Hilborn, Eden Wheeler, and Amber Maxwell.  These affidavits describe similar "shift fees" and "tip-outs."

Visions maintains that conditional certification is inappropriate because plaintiffs cannot show that they and the class they seek to represent are covered individuals under the FLSA. Specifically, Visions argues that plaintiffs are neither engaged in interstate commerce or the production of goods for interstate commerce nor employed by an enterprise engaged in interstate commerce as required by 29 U.S.C. § 206(a).  Visions asserts that this Court's jurisdiction is dependent upon satisfying these requirements.  Plaintiffs contend that Visions' arguments are not relevant to the issue of conditional certification because they go to the merits of their claims.

The FLSA provides that "every employer shall pay to each of his employees who . . . is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage. 29 U.S.C. § 206(a).  "Commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).  "'Enterprise' means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose . . . ." 29 U.S.C. § 203(r)(1).  "'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise that has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, and is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 . . . ."  29 U.S.C. § 203(s)(1).

In *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 33 (1st Cir. 2007), the First Circuit Court of Appeals, relying on the Supreme Court's decision in *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006), concluded that the FLSA's requirement that an individual be employed by an enterprise engaged in interstate commerce is not jurisdictional. Several district courts have followed suit, concluding that enterprise coverage, along with the FLSA's requirement that the plaintiff be engaged in interstate commerce or the production of goods for interstate commerce, goes to the merits of the plaintiff's claim. *See, e.g.*, *Brown v. Peaches & Pears Social Club, Inc.*, No. 4:11CV00224-SWW (E.D. Ark. Dec. 12, 2011); *Rodriguez v. Diego's Restaurant, Inc.*, 619 F. Supp. 2d 1345, 1348-49 (S.D. Fla. 2009); *Daniel v. Pizza Zone Italian Grill & Sports Bar, Inc.*, 2008 WL 7933660 (M.D. Fla. March 24, 2008); *Jiang v. Lee's Happy House*, 2007 WL 3105087 (N.D. Cal. Oct. 23, 2007).

The Eighth Circuit has not decided these issues. In the absence of controlling Eighth Circuit precedent, the Court adopts the reasoning articulated by the First Circuit in *Chao* and the other courts that have determined that individual and enterprise coverage under the FLSA are not jurisdictional requirements. Accordingly, the Court will not consider these arguments for purposes of the present motion. *See, e.g.*, *Carden v. Scholastic Book Clubs, Inc.*, 2011 WL 2680769, at *2 (W.D. Mo. July 8, 2011) ("At this early stage of litigation, the Court does not reach the merits of the plaintiff's claims."); *Resendiz-Ramirez*, 515 F. Supp. 2d at 942-43 (holding that whether defendants' violations of the FLSA were willful went to the merits of the case, not whether notice should be issued).

Visions notes that several exotic dancers, including Crystal Hilborn, Eden Wheeler, and Stacy Jones, were determined not to be employees under the FLSA in a similar action brought against another gentlemen's club. *See Hilborn v. Prime Time Club, Inc.*, No. 4:11CV00197-

BSM (E.D. Ark. July 12, 2012). At this stage of the litigation, the Court will not consider this argument, as it also goes to the merits of certain plaintiffs' claims. *See, e.g.*, *Edwards v. Multiband Corp.*, 2011 WL 117232, *3-4 (D. Minn. Jan. 13, 2011).

Finally, Visions contends that conditional certification is inappropriate because plaintiffs have failed to establish that there are other individuals who wish to opt in to the proposed class. "Courts are split with respect to whether and how plaintiffs must demonstrate that those similarly-situated, putative class members are interested in joining the suit." *O'Donnell v. Robert Half Int'l, Inc.*, 534 F. Supp. 2d 173, 179 (D. Mass. 2008); *see, e.g.*, *Amendola v. Bristol-Myers Squibb Co.*, 558 F. Supp. 2d 459 (S.D.N.Y. 2008) (not requiring showing); *Songer v. Dillon Res., Inc.*, 569 F. Supp. 2d 703 (N.D. Tex. 2008) (requiring showing). Courts in the Eighth Circuit are no exception. *See, e.g.*, *Musticchi v. Little Rock*, No. 4:08-cv-00419 SWW (E.D. Ark. Feb. 2, 2009) (requiring showing); *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97 (S.D. Iowa 2008) (requiring showing); *Kautsch v. Premier Communications*, 504 F. Supp. 2d 685 (W.D. Mo. 2007) (not requiring showing).

This action represents the third time in less than two years that Visions has been sued by former dancers for alleged violations of the FLSA. *See Hilborn v. Visions*, No. 4:11CV0124-BSM; *Pence v. Visions*, 4:12CV211-JMM. The Court acknowledges the recent uptick in collective action litigation in this district involving exotic dancers. *See, e.g.*, *Taylor v. Drugstore Cowboys, Inc.*, No. 4:11CV269-DPM; *Brown v. Barney's Barn, Inc.*, No. 4:11CV224-SWW; *Hilborn v. Prime Time, Inc.*, No. 4:11CV197-BSM. Assuming without deciding that the FLSA requires an employee to demonstrate that other employees are interested in the action, the Court is satisfied that some potential class members would wish to opt in to this litigation if given the

opportunity. *See Helmert v. Butterball, LLC*, 2009 WL 5066759, at *5 (E.D. Ark. Dec. 15, 2009).

For these reasons, the Court finds that plaintiffs have carried their lenient burden of establishing that they are similarly situated to other dancers who worked at Visions. They have submitted some evidence of a common decision, policy, or plan designed to deny dancers pay for all hours worked. Therefore, the Court will conditionally certify this action for purposes of giving notice.

### B.      Temporal Scope of Class and Equitable Tolling

Plaintiffs ask the Court to authorize notice to all women who danced for Visions at any time from February 11, 2008 to the present. February 11, 2008 is three years prior to the date that a similar collective action lawsuit was filed against Visions. *See Hilborn v. Visions*, 4:11CV0124-BSM. The plaintiffs in that case filed a motion for collective action certification on July 12, 2011, but dismissed their complaint with prejudice before the Court could rule on the motion. Plaintiffs contend the statute of limitations for potential class members should be tolled from the date the complaint was filed in *Hilborn*. In the alternative, plaintiffs ask the Court to authorize notice to all women who danced for Visions at any time from April 24, 2009 (three years preceding the filing of the complaint in this case) and the present. Visions maintains that the Court should use May 14, 2010 (two years preceding the filing of Ms. Whitworth's complaint) as the starting point for notice.

An action under the FLSA must be commenced within two years after the alleged violation occurs unless the plaintiffs can demonstrate that the employer's conduct was willful, in which case the limitations period is three years. 29 U.S.C. § 255(a). An action is commenced

under the FLSA when a party files suit.  29 U.S.C. § 256(a).  In the case of a collective action, the action is commenced upon the filing of a written consent to join.  29 U.S.C. § 256(b).

Plaintiffs allege willful violations of the FLSA.  Therefore, the Court will use a three-year limitations period.  At this stage in the litigation, judicial economy is served by conditionally certifying a larger, more inclusive class.  *See, e.g.*, *Resendiz-Ramirez*, 515 F. Supp. 2d 937; *Kautsch*, 504 F. Supp. 2d 685; *Burch v. Qwest Communications Int'l, Inc.*, 500 F. Supp. 2d 1181 (D. Minn. 2007).

That said, plaintiffs have not demonstrated extraordinary circumstances warranting the application of equitable tolling, such that notice should be provided to exotic dancers who worked for Visions within the three-year period preceding the filing of the complaint in *Hilborn*.

Equitable tolling "is premised on the plaintiff's excusable neglect, which may or may not be attributable to the defendant."  *Lawrence v. Cooper Communities, Inc.*, 132 F.3d 447, 451 (8th Cir. 1998).  It is appropriate "when the plaintiff, despite all due diligence, is unable to obtain vital information bearing on the existence of his claim."  *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 836 (8th Cir. 2002) (quoting *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995)).  The relevant inquiry is "whether a reasonable person in the plaintiff's position would have been aware . . . of a possible violation . . . ."  *Dring*, 58 F.3d at 1329. "[T]he qualification 'possible' is significant because if a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run."  *Id.* (internal quotation marks omitted).  "As a general rule, equitable tolling is a remedy reserved for circumstances that are truly beyond the control of the plaintiff."  *Shempert v. Harwick Chemical Corp.*, 151 F.3d 793, 797-98 (8th Cir. 1998).  Plaintiffs bear the burden of demonstrating why they are entitled to equitable tolling, and the resolution of the issue is fact-

specific.  *See Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).  "Equitable tolling is precluded once it is shown that the employee was generally aware of her rights."  *Miller v. Runyon*, 32 F.3d 386, 389 (8th Cir. 1994).

Plaintiffs claim that equitable tolling is appropriate because (1) defendants chose to misclassify plaintiffs and putative plaintiffs; (2) defendants openly misinformed plaintiffs and putative plaintiffs that they were independent contractors not entitled to federal or state labor law protections; (3) defendants were put on notice of their violations no later than February 11, 2011, and yet they continued thereafter to refuse to pay their employee dancers any wage at all; and (4) defendants failed to post any of the required federal or state labor law posters anywhere in the workplace such that plaintiffs and putative plaintiffs could have been informed of their rights under the law.

"[B]ecause equitable tolling issues often arise for prospective plaintiffs, courts frequently permit notice to be keyed to the three-year period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."  *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *see, e.g.*, *Roco v. Star One Staffing Int'l, Inc.*, No. 4:10CV00030-DPM (E.D. Ark. Nov. 15, 2010) (measuring notice period from date complaint was filed and reserving ruling on equitable tolling); *Whitehorn v. Wolfgang's Steakhouse*, 767 F. Supp. 2d 445 (S.D.N.Y. 2011) (declining to rule on equitable tolling issue at notice stage); *Kautsch*, 504 F. Supp. 2d 685 (same).  Plaintiffs, however, have cited no authority, and the Court has not found any, measuring the limitations period from the date a prior similar action was filed, and they have not shown exceptional circumstances warranting the application of equitable tolling on a class-wide basis at this stage of the proceedings.  *See generally Harvey v. AB Electrolux*, 857 F. Supp. 2d 815, 819

(N.D. Iowa 2012) (holding that until an adequate showing that the statute of limitations should be tolled is made, 29 U.S.C. § 256 governs when the action commences as to opt-in plaintiffs, the notice period not necessarily coinciding with the time for viable claims); *Amendola*, 558 F. Supp. 2d at 479 (addressing equitable tolling of claims of potential class members notwithstanding conclusion that court-authorized notice was inappropriate).

Classifying a group of employees as exempt under the FLSA or informing employees that they are not eligible for minimum wages and overtime has generally not been held to constitute misconduct justifying equitable tolling.  *See, e.g.*, *Claeys v. Gandalf, Ltd.*, 303 F. Supp. 2d 890, 897 (S.D. Ohio 2004) ("To the contrary, such statements simply inform a plaintiff of facts that might give rise to claims he is entitled to pursue.").  As one court has explained, "[t]o hold that a failure to disclose that an employee is entitled to overtime pay is sufficient to work an equitable toll would be tantamount to holding that the statute is tolled in all or substantially all cases seeking unpaid overtime."  *Amendola*, 558 F. Supp. 2d at 479.

With respect to plaintiffs' claim that defendants were put on notice of their violations no later than February 11, 2011, and yet continued to refuse to pay their employee dancers any wages, defendants were under no obligation to provide contact information for potential class members as of the filing of the complaint in *Hilborn*.  *See id.* at 480.

Finally, plaintiffs have not shown that failure to post notice, by itself, warrants equitable tolling at this time.  *See, e.g.*, *Archer v. Sullivan County, Tenn.*, 1997 WL 720406, at *4 (6th Cir. Nov. 14, 1997) ("We are not persuaded that the [employer's] failure to post such a notice justifies invocation of the tolling doctrine."); *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 n.5 (11th Cir. 1984) ("Although the failure of the employer to display the poster may toll the 180-day notification period, it will not normally toll the two-year statute of

limitations for bringing the action in court, which continues to run from the date of the alleged wrongful act."); *Ramirez v. CSJ & Co.*, 2007 WL 1040363, at *3 (S.D.N.Y. April 3, 2007) (rejecting argument that failure to post a notice, in and of itself, warrants equitable tolling).  As defendants point out, Ms. Whitworth's affidavit suggests that some potential class members may have had knowledge of their rights despite defendants' alleged failure to post the required notice. *See DeBrunner v. Midway Equip. Co.*, 803 F.2d 950, 952 (8th Cir. 1986) (holding that an employer's failure to post notice of ADEA rights may be grounds for equitable tolling until the employee acquires general knowledge of his or her rights).

Plaintiffs have not demonstrated extraordinary circumstances warranting the application of equitable tolling on a class-wide basis, such that notice should be provided to exotic dancers who worked for Visions within the three-year period preceding the filing of the complaint in *Hilborn*.  Notice will be limited to exotic dancers who worked for Visions between April 24, 2009 and the present.  The Court will toll the statute of limitations for potential class members from November 29, 2012, the date plaintiffs' filed their motion for collective action certification, through the date of this Order, but otherwise reserves ruling on the timeliness of any particular individual's claim.

## C.    Notice

### 1.    Form of Notice

The Court has reviewed the proposed notice submitted by plaintiffs and approves it as to form.

Visions' request to include the phrase "who claim they were denied minimum wage or were paid inappropriately" at the end of the "TO" line is denied.  Its request to modify the "COMPOSITION OF THE CLASS" section to include similar language is also denied.

Visions requests that the following language be included in the "DESCRIPTION OF THE LAWSUIT" section: "Visions maintains that all dancers are lessees and independent contractors who are responsible for using their own business judgment and control to affect profitability and responsible for their own tax liability and business operation." That request is denied. The current language is sufficient. *See, e.g.*, *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334 (W.D.N.Y. 2008); *Gieseke v. First Horizon Home Loan Corp.*, 2006 WL 2919076 (D. Kan. Oct. 11, 2006).

Visions' request to modify the "YOUR RIGHT TO PARTICIPATE IN THIS SUIT" and the "FURTHER INFORMATION" sections to indicate that consent to join forms can be obtained from the Clerk of the Court rather than plaintiffs' counsel is denied.

Finally, the Court denies Visions' request to modify the "EFFECT OF JOINING THIS SUIT" section to indicate that costs could be assessed against the proposed class. "The courts have rejected [such requests], noting it is not clear whether prevailing defendants can be awarded defense costs from plaintiffs seeking recovery under the FLSA, and such a notice may discourage plaintiffs from joining the litigation." *Martinez v. Cargill Meat Solutions*, 265 F.R.D. 490, 500 (D. Neb. 2009).

### 2.      Dissemination of Notice

To facilitate notice, Visions is ordered to provide plaintiffs' counsel with the names and last known home, work, and email addresses of each potential class member within 14 days of the date of this Order. Plaintiffs shall then have 90 days to distribute notice and file opt-in consent forms with the Court.

Plaintiffs, anticipating that the contact information maintained by defendants for potential class members will be inaccurate, make several additional requests regarding dissemination of

the notice.  First, they request permission to maintain a web page where potential class members can access and print a copy of the proposed notice, consent to join, and most recent version of the complaint and to place an advertisement on Facebook that links to the website.  Visions objects to this request, contending it would stir up litigation.  Plaintiffs further request that defendants be required to post the notice in a conspicuous location at defendants' facilities where class members would be most likely to see the notice and to maintain at all times an adequate number of copies of the consent to join along with the notice.  Finally, they request permission to publish the notice in a newspaper of general circulation in Arkansas and to pursue alternative methods of locating class members, such as via email, telephone, social media, or other means including other information provided by plaintiffs and members of the class who have filed consents to join.  Visions does not object to these requests.

Plaintiffs' request that defendants be required to post the notice in a conspicuous location at defendants' facilities is granted.  *See Putnam v. Galaxy 1 Mktg., Inc.*, 276 F.R.D. 264, 277-78 (S.D. Iowa 2011) (noting that "courts routinely approve requests to post notice in common areas or on employee bulletin boards, even if there is an alternative form of notice").  Plaintiffs' additional requests are denied without prejudice.  Plaintiffs may renew these requests in the event first class mail proves to be an unreliable means of disseminating notice to potential class members.  *See Martinez*, 265 F.R.D. at 500-01.

* * *

For the foregoing reasons, plaintiffs' motion for certification of collective action, for equitable tolling, for disclosure of contact information for potential opt-in plaintiffs, and to send court-approved notice is granted in part and denied in part (Dkt. No. 27).  The Court conditionally certifies this case as a collective action and authorizes notice to all women who

danced for defendants any time from April 24, 2009 to the present.  The Court will toll the statute of limitations for potential class members from November 29, 2012, the date plaintiffs' filed their motion for collective action certification, through the date of this Order, but otherwise reserves ruling on the timeliness of any particular individual's claim.

SO ORDERED this 7th day of August, 2013.

_____

Kristine G. Baker
United States District Judge